```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF ARKANSAS
                      WESTERN DIVISION
                        4:10-CV-0073
```

Willard Proctor, Jr.            )
                                )
    v.                          )              ORDER
                                )
Honorable James Hannah, Chief   )
Justice et al.                  )

Plaintiff, an Arkansas Circuit Judge, was removed from his office by the Arkansas Supreme Court. He is before the Court[1] challenging his removal from judicial office on federal constitutional grounds, and asking the Court to invoke its supplemental jurisdiction. Plaintiff moves for a temporary restraining order, preliminary injunction, and reinstatement as a circuit judge. Defendants deny plaintiff is entitled to relief on a number of grounds, and specifically assert this Court lacks jurisdiction to hear this matter.

The Court finds it is without subject matter jurisdiction and must, therefore, dismiss plaintiff's suit.

I.  Background[2]

On January 1, 2004, plaintiff, Willard Proctor, Jr., an

---

[1] On February 16, 2010, this case was assigned to the undersigned, a United States District Judge for the District of Minnesota [Docket No. 15].

[2] The facts in this Order are taken from the parties' pleadings. For purposes of defendants' motions to dismiss, the facts are viewed in the light most favorable to plaintiff. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

African-American, was elected to a six-year term as a circuit judge for Arkansas's Fifth Division of the Sixth Judicial District. (Am. Compl. ¶¶ 7, 34.) Among his duties as circuit judge, plaintiff served as the Fifth Division's department head, managing the probation department. (Am. Compl. ¶ 11.)

In 2007, plaintiff was the subject of complaints to the Arkansas Judicial Discipline and Disability Commission.[3] <u>Ark. Judicial Discipline & Disability Comm'n v. Proctor</u>, No. 09-738, slip op. at 2 n.1 (Ark. Jan. 25, 2010). A three-member panel of the Commission heard the matter and received testimony. <u>Id.</u> at 3. During the hearing, plaintiff made an oral motion based on the Fourteenth Amendment's Equal Protection Clause. Specifically, plaintiff's counsel argued "Judge Proctor, as an African-American judge, is being held to a standard that his white counterparts are not being held to." (Ex. 5, Tr. 7:10-16.) Plaintiff made no further reference to this argument, rendering it abandoned. After the Disciplinary Commission's hearing, the three-member panel concluded plaintiff "should be removed from the bench."

The full Commission reviewed the panel's determinations and entered its own findings of fact and conclusions of law. The

---

[3] The Arkansas Supreme Court's Opinion stated the judicial complaints concerned "Judge Proctor's involvement in and relationship with a probation-type program, known as Cycle Breakers; the impropriety of relationships with defendants within his jurisdiction; and his treatment of his staff." <u>Ark. Judicial Discipline & Disability Comm'n v. Proctor</u>, No. 09-738, slip op. at 2 (Ark. Jan. 25, 2010).

Commission concluded plaintiff violated Canons 2, 2A, 2B, 3B(4), 3B(7), 4A, and 4C of the Arkansas Code of Judicial Conduct (2007).[4] Based on these findings, the Commission recommended the Arkansas Supreme Court remove plaintiff from his judicial office.

On January 25, 2010, the Arkansas Supreme Court issued its Opinion, accepting the Commission's recommended findings in part, modifying and rejecting them in part, and ordering plaintiff removed from his elected office. Id. at 2. The court's order cited Arkansas Code § 16-10-410(b)(5), which provides "[a] judge may be removed from office . . . [for a w]illful violation of the Arkansas Code of Judicial Conduct." Id. at 60. Under this provision, "[a]ny judge removed from office pursuant to this subchapter cannot be appointed or elected thereafter to serve as a judge." Ark. Code Ann. § 16-10-410(d).

The court's order addressed Proctor's procedural complaints. Plaintiff complained the Commission failed to provide proper notice of his hearing and the charges against him; the three-member panel erroneously delegated some of their responsibilities; and the Commission erred in its application of the Arkansas Administrative Procedure Act. The Arkansas Supreme Court acknowledged certain procedural and rule violations, but concluded the Arkansas Judicial Discipline and Disability Commission Rules do not require strict

---

[4] The Supreme Court of Arkansas noted it adopted new Canons on July 1, 2009, but as plaintiff's complaints were lodged in 2007, the court referenced the 2007 Canons.

compliance, and held plaintiff had been afforded due process. See Proctor, slip op. at 57 ("[W]e cannot say, after examining the record before us, that Judge Proctor was in any way deprived of a fair hearing, meaningful notice, or a meaningful opportunity to defend in violation of his due-process rights.").

After the Arkansas Supreme Court removed plaintiff from his judicial office, County Judge F.G. "Buddy" Villines asked plaintiff to surrender his courthouse keys and offices, and leave the courthouse premises. (Am. Compl. ¶ 10.) The next day, Vann Smith, Administrative Judge for the Sixth Judicial District, met with plaintiff's staff to transfer plaintiff's probation duties to the Department of Community Corrections. (Am. Compl. ¶ 12.)

One week later, plaintiff filed this suit, naming the Justices of the Arkansas Supreme Court, Pulaski County's Chief Executive Officer (County Judge Buddy Villines), the members and executive director of the Arkansas Judicial Discipline and Disability Commission, the Administrative Judge for the Sixth Judicial District (Vann Smith), and the State of Arkansas, as defendants.

Plaintiff claims the Arkansas Supreme Court's removal order violated his due process and equal protection rights by failing to afford him adequate notice, a fair hearing, and denying him an opportunity to seek review of the decision. (Am. Compl. ¶¶ 13, 14, 15.) Plaintiff further claims his removal from office violated the Arkansas Constitution in removing him from his department head and

probation office duties, which he characterizes as executive. In addition, he complains state law unlawfully bars him from seeking re-election. (Am. Compl. ¶¶ 11-12.) He contends that in the removal proceedings, the Commission and the Supreme Court of Arkansas treated him differently from similarly situated white judges. (Am. Compl. ¶ 34.)

Plaintiff's complaint seeks an injunction restoring him to his elected office;[5] a judgment declaring defendants' actions violated his constitutional rights; and a declaration that "the prohibition on a judge that is removed from seeking appointment or election . . . [is] unconstitutional." Plaintiff, finally, seeks compensatory and punitive damages against defendants in excess of $100,000.

The Court conducted a telephone conference on February 16, 2010, directing all parties to address this Court's jurisdiction in light of the Rooker-Feldman doctrine. The parties complied on February 22, 2010.

The Court heard the matter on February 26, 2010, including consideration of plaintiff's motion for a temporary restraining order and preliminary injunction, pursuant to Fed. R. Civ. P. 65.

---

[5] Specifically, plaintiff's complaint seeks an injunction preventing defendants "from engaging in such intentional, discriminatory and unconstitutional policies and practices as complained of herein." (Am. Compl. ¶ 36B.) Based on plaintiff's later-filed Motion for Emergency Hearing, the Court construes his position as requesting a mandatory injunction restoring him to his position as circuit judge.

5

On that same date, the Court considered questions of its own jurisdiction, as well as defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1),(2),(5),(6) & (7).  Specifically, defendant Villines claims this Court lacks subject matter jurisdiction, and that plaintiff failed to state a claim and join necessary parties.  The remaining state defendants deny the Court possesses subject matter jurisdiction; claim state defendants are entitled to judicial immunity; assert the Eleventh Amendment bars the Court from awarding monetary damages against defendants; claim plaintiff lacks standing to challenge the law barring his re-election; and maintain plaintiff has failed to state a claim upon which relief can be granted.  Finally, the state defendants deny plaintiff has properly served any state defendant, other than the Commission's Executive Director, David Stewart.

II. <u>Analysis</u>

With the exception of habeas corpus cases, a federal district court lacks subject matter jurisdiction over challenges to state court judgments by application of the <u>Rooker-Feldman</u> doctrine. <u>Lemonds v. St. Louis County</u>, 222 F.3d 488, 492 (8th Cir. 2000). That doctrine, named for two eponymous cases, holds "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 482 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923). To the contrary, Congress

has explicitly vested jurisdiction for such review in the United States Supreme Court. 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . .").

Beyond prohibiting challenges to state court judgments, the Rooker-Feldman doctrine bars a district court's review of "constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court." Lemonds, 222 F.3d at 492-93. For example, the Eighth Circuit Court of Appeals has applied Rooker-Feldman when the federal plaintiff's alleged injury resulted from a state court judgment. See Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc., 487 F.3d 1154, 1157 (8th Cir. 2007); see also Centres, Inc. v. Town of Brookfield, 148 F.3d 699, 702 (7th Cir. 1998) (distinguishing federal claims caused by a state court judgment from federal claims that the state court failed to remedy). In sum, "where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring).

In analyzing subject matter jurisdiction, the Court looks to the face of the complaint and draws "all reasonable inferences in

favor of the plaintiff." Biscanin v. Merrill Lynch & Co., 407 F.3d 905, 907 (8th Cir. 2005).  "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." Id.  Because federal courts "possess only that power authorized by Constitution and statute," this Court may raise jurisdictional questions sua sponte.  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Lemonds, 222 F.3d at 492.

In the present case, the Arkansas Supreme Court ordered plaintiff removed from his judicial office pursuant to Arkansas Code § 16-10-410.  This same statute bars removed judges from seeking re-election.  Plaintiff's complaint seeks an injunction to restore him to his judicial post; a declaratory judgment that defendants' actions violated his constitutional rights; and that the "prohibition on a judge that is removed from seeking appointment or election be declared unconstitutional." (Am. Compl. ¶ 36A-C.)  Plaintiff's motion similarly requests a preliminary injunction "requiring plaintiff be restored his position as circuit judge, allowing him to perform his executive duties and allowing him to seek re-election as a circuit judge." (Pl.'s Emergency Mot. 43.)

The injuries plaintiff alleges are the direct consequence of the Arkansas Supreme Court's judgment.  Each of his asserted wrongs are either directly encompassed in the state Supreme Court's

judgment, or - as the bar from seeking re-election - "inextricably intertwined" with those claims already adjudicated in state court. The relief plaintiff seeks is, therefore, barred by the Rooker-Feldman doctrine, which denies this Court jurisdiction over his claims.

To avoid this bar, plaintiff now attempts to recast some of his claims as general challenges to state rules and proceedings which, he argues, place them beyond the scope of Rooker-Feldman. He particularly points to defendants' decision to remove him from his department head and probation office duties, and to the Arkansas statutory re-election bar. He finally claims this Court possesses jurisdiction to decide his federal civil rights and equal protection claims. The Court disagrees.

Plaintiff correctly notes the Arkansas Supreme Court is empowered to remove a judge only from his judicial duties, not from his executive or legislative responsibilities. ARK. CONST. amend. LXVI ("Under this amendment, a judge who also has executive or legislative responsibilities shall be suspended or removed only from judicial duties."). From this premise, plaintiff claims that when defendant Villines ordered him to leave the courthouse, and defendant Smith transferred his executive duties to state probation, he was removed from executive duties in violation of the state constitution. The Court cannot agree.

The executive duties of which plaintiff was "deprived" were

9

entirely based on his being a circuit judge. At oral argument, plaintiff conceded he was not paid separately for his probation office work. He further acknowledged the judicial officer who assumed plaintiff's probationary duties was not going to receive additional income for the additional work. The Court, therefore, finds these "executive duties" simply do not exist separately or apart from plaintiff's judicial post. Once the Arkansas Supreme Court stripped plaintiff of his judicial office, these executive duties were no longer his to enjoy or execute. As this Court is barred by the Rooker-Feldman doctrine from reviewing the Arkansas Supreme Court's decision regarding plaintiff's judicial responsibilities, it is similarly barred from reviewing the inextricably bound consequence of that decision - his removal from court executive powers which may inhere in that office.

Rooker-Feldman also bars this Court's review of the Arkansas statutory bar to plaintiff's ability to run for re-election. See Ark. Code Ann. § 16-10-410(d) ("Any judge removed from office pursuant to this subchapter cannot be appointed or elected thereafter to serve as a judge."). Plaintiff emphasizes, and this Court recognizes, the Supreme Court allows district courts to review general challenges to a state rule's constitutionality. See Feldman, 460 U.S. at 487 (The District Court has jurisdiction over those elements of the respondents' complaints that "involve a general challenge to the constitutionality of [state bar rules.]").

10

The flaw in plaintiff's argument is, of course, that he is not merely bringing a general challenge to the Arkansas statute's constitutionality. In <u>Feldman</u>, bar applicants sued in federal court to challenge a state's requirement that bar admittees attend accredited law schools. <u>Id.</u> at 487. While <u>Rooker-Feldman</u> barred the district court's review of the state's bar admission decisions, it could review the rule requiring attendance at an accredited law school. <u>Id.</u> The Supreme Court reasoned the accreditation rule injured plaintiffs, regardless of the state court's application of the rule.

In contrast to the <u>Feldman</u> bar applicants, plaintiff's injury does not stem from the Arkansas statute -- it flows directly from the Arkansas Supreme Court's order dismissing him as a judge. The Arkansas Supreme Court cited Arkansas Code § 16-10-410(b)(5), which provides "[a] judge may be removed from office . . . [for a w]illful violation of the Arkansas Code of Judicial Conduct." <u>Proctor</u>, slip op. at 60. Only after this order did the consequent effect occur: a removed judge may not run for re-election. Ark. Code Ann. § 16-10-410(d) ("Any judge removed from office pursuant to this subchapter cannot be appointed or elected thereafter to serve as a judge."). Because plaintiff's injury stems from the Arkansas Supreme Court's order, not the mere existence of a state rule, this Court lacks jurisdiction over plaintiff's claim.

Finally, plaintiff argues he did not raise his civil rights

11

claims in the state proceedings, and should have the opportunity to raise those concerns in federal court. See Simes v. Huckabee, 354 F.3d 823, 827 (8th Cir. 2004) ("[T]he inextricably intertwined analysis may be inapplicable where federal plaintiffs have not been given a reasonable opportunity to raise their federal claims in the state proceedings."); Vargas v. City of New York, 377 F.3d 200, 208 (2d Cir. 2004) (where plaintiff raised an equal protection claim based on suspect classification for the first time in federal court, Rooker-Feldman did not bar the federal court's addressing the issue). Plaintiff is correct when he notes Rooker-Feldman would not bar a federal court from addressing a plaintiff's federal claims "where the state court declines to address those claims and rests its holding solely on state law." Simes, 354 F.3d at 829. This, however, is not such a case.

Here, the transcript of plaintiff's hearing before the three-member panel reflects plaintiff raised his Fourteenth Amendment concerns on May 1, 2009. (Ex. 5, Tr. 7:10-16 ("Judge Proctor, as an African-American judge is being held to a standard that his white counterparts are not being held to.").) While plaintiff may have made a tactical decision to abandon his federal claims, he well knew of their existence.

Plaintiff, thus, has not been deprived "of any forum, state or federal, where he has a reasonable opportunity to present his federal constitutional claims." Simes, 354 F.3d at 829. Not only

did plaintiff have a "reasonable opportunity" to raise his constitutional concerns, he actually availed himself of this opportunity. For whatever reason, plaintiff opted against pursuing them, but only after first laying them before the disciplinary panel. Having done so, this Court may not now allow plaintiff a second bite at the apple. See Bryant v. Sylvester, 57 F.3d 308, 312 (3d Cir. 1995) ("Rooker-Feldman is partly concerned with finality, with ensuring that litigants do not take multiple bites from the same apple."); Hagerty v. Succession of Clement, 749 F.2d 217, 220 (5th Cir. 1984) ("A plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action."). Plaintiff opted against pursuing his federal civil rights claims in the state proceedings, and he may not now raise them in federal court.

State courts are full-empowered to adjudicate federal civil rights and constitutional claims. Plaintiff decided to abandon those claims in state court. To allow him to raise them in federal court would encourage plaintiffs to split causes of action between state and federal courts. If this split was permitted, a litigant could turn Rooker-Feldman from a jurisdictional shield into a sword. Such a course would undermine the principles of federalism and comity underlying the doctrine.

III. <u>Opportunity For Review</u>

This Court's lack of subject matter jurisdiction does not leave plaintiff without remedy. While this Court is not empowered to hear this case, plaintiff may apply to the United States Supreme Court for relief and review of the state court judgment. <u>See</u> 28 U.S.C. § 1257. Plaintiff remains well within the time to file his petition for writ of certiorari to the Supreme Court. <u>See</u> Sup. Ct. R. 13.1 (petition is timely when "it is filed with the Clerk of this Court within 90 days after entry of the judgment."). Indeed, at oral argument, plaintiff acknowledged he had a right to such an appeal, and knew he could do so.

IV. <u>Conclusion</u>

Finding itself without jurisdiction over plaintiff's claims, the Court may not address defendants' additional defenses or plaintiff's substantive allegations. <u>See</u> <u>Patmon v. Michigan Supreme Court</u>, 224 F.3d 504, 510 (6th Cir. 2000) (declining to address the Eleventh Amendment immunity of defendants because "application of the <u>Rooker-Feldman</u> doctrine reveal[ed] that the district court did not have jurisdiction").

The Court denies plaintiff's motion and dismisses his claims. <u>See</u> <u>Biscanin v. Merrill Lynch & Co.</u>, 407 F.3d at 907 ("If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate.").

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  March 2, 2010

                                        s/ James M. Rosenbaum
                                        JAMES M. ROSENBAUM
                                        United States District Judge